UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SHEILA ANTHONY-BROWN, § <br> Plaintiff, § <br> § <br> v. § <br> § <br> JEFFERSON DENTAL CLINIC, P.C., § <br> ET AL., § <br> Defendants. § | | CIVIL ACTION NO. 4:23-CV-59-P |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION REGARDING DEFENDANTS LARRY MOORE AND JEFFERSON DENTAL CLINIC, P.C.

Pending before the Court are Defendant Larry Moore ("Moore")'s Motion to Dismiss [doc. 8], filed March 16, 2023, and Defendant Jefferson Dental Clinic, P.C. ("JDC")'s Motion to Dismiss Under Rule 12(B)(6) [doc. 14], filed March 21, 2023. Having carefully considered the motions[1] and all relevant, applicable law, the Court finds both Defendants' motions should be **GRANTED** and all claims against them be **DISMISSED**.

## I.   BACKGROUND

On January 17, 2023, Anthony-Brown filed a Complaint [doc. 1] against Defendants Moore and JDC[2] alleging civil rights violations under 42 U.S.C. § 1983 stemming from an allegedly unpleasant experience with Dr. Chen and Dr. Chen's unnamed assistant at JDC. The undersigned was assigned to the case the same day. The facts before the Court, as provided by Anthony-Brown, are, at best, cryptic and unclear. Anthony-Brown asserts Moore[3] first violated

---

[1] The Court notes that Plaintiff *pro se* Sheila Anthony-Brown wholly failed to respond to both Moore and JDC's motions.

[2] Anthony-Brown also lists Yuexi Chen, D.D.S. ("Dr. Chen"), Klar C. Henry & Nesta Family Partnership, and the North Richland Hills Police Department ("NRHPD") as Defendants in her suit. The Court issued its findings, conclusions, and recommendation of dismissal of all claims against NRHPD on April 17, 2023.

[3] Larry Moore served as an Assistant Criminal District Attorney at the Tarrant County District Attorney's office at all times relevant to this lawsuit.

1

her civil rights during a meeting at Moore's office at an unknown time in 2021. (Plaintiff's Complaint ("Pl.'s Compl.") at 16.) During this meeting, Anthony-Brown asserts, Moore "refused to reopen" the NRHPD investigation of Anthony-Brown's experience at JDC. (*Id.*) Regarding her first meeting with Moore, Anthony-Brown pleads:

> I need to make a complaint with the Texas Dental Board
>
> [The] Dr. can do whatever they want with me
>
> I asked to speak with his supervisor [and] he stated he is the supervisor, and no one is above him.
>
> Stated he will not open case on hardworking people just because they didn't return a call.
>
> Refused to allow investigation of what happened to me on 3/8/2021
>
> Refused to allow me to press criminal charges against the dentist and the assistant
>
> Refused to investigate or ask for supporting evidence of surveillance cameras of assault inside [JDC]
>
> Refused to investigate or ask for surveillance footage on who left me outside on the ground after dental procedure.

(*Id.*) Anthony-Brown had a second meeting with Moore in March of 2022. (Pl.'s Compl. at 16.) She brought a "statement from the Texas Dental Board of Examiners" with her to the meeting showing "[p]roof of disciplinary judgment (sic) from TSBDE against Dr. Chen for malpractice, overdose of Nitrous oxide." (*Id.*) Anthony-Brown states she, again, asked Moore to "reconsider opening the criminal case and at least investigate what happened to [her] on March 8, 2021, at Jefferson Dental," but that Moore "refused to assist [her]." (*Id.*)

In his motion, Moore brings four arguments for prevailing on Anthony-Brown's claims, including, *inter alia*, threshold arguments that Anthony-Brown's claims against him are barred by "absolute prosecutorial immunity," "Eleventh Amendment [i]mmunity," and, for claims

brought against him in his individual capacity, "qualified immunity." (Defendant Moore's Motion to Dismiss ("Def. Moore's Mot.") at 3.)

As to JDC, it is unclear from Anthony-Brown's Complaint which specific cause of action she brings against the dental clinic other than a blanket claim that it violated her § 1983 rights. It is clear, however, that Anthony-Brown is complaining about the dental treatment she received at JDC on March 8, 2021, at the hands of her treating dentist, Dr. Chen, and Dr. Chen's unnamed assistant. She pleads the following as pertains to JDC:

> In consultation with Dr. Chen, she stated that my insurance (MetLife) did not cover caps and I needed to pay full price of 476.00 she stated there is "no cavity" her recommendation was a cap on tooth #27.
>
> I complained to Dr. Chen about pain in treatment, I was told that if I wanted to not be in pain, I would have to pay another 100.00 and it would have to be paid for right then and asked for my card.
>
> I requested the office manager in which I met Office manager (Tyler Bennett) and he confirmed I would have to pay another 100.00 to have laughing gas (nitrous oxide) he stated he would allow payment on my departure.
>
> I was administered laughing gas (nitrous oxide) by Dr. Chen and assistant, and they walked away with gas being administered leaving me alone
>
> . . . .
>
> In my observation of employees on this day it was fully staffed. How did no one see me laying there how no one said anything about me laying there for hours inhaling (sic) this harmful gas.
>
> Unknowing of the time, I could hear voices and Dr. Chen putting her fingers in my mouth saying, "she is not a normal person", three times while she was treating me.
>
> I began to cry and say you are hurting me, please you are hurting me. They ignored my pleas of pain.
>
> I hit Dr. Chen.
>
> Dr. Chen irritably stated to me you could get into serious trouble for hitting me and to not raise my hands again, I was advised by Dr. Chen to hold on to the arms of the chair and not to lift my hands again.

Dr. Chen told the assistant to hold my head down and still and to turn the gas all the way up.
*No documentation of amount, start during or finished.

The assistant placed the palms of his hands on my head holding my head down and using his fingers to hold my mouth open.
*No authorization to be restrained.

My body started jerking uncontrollably, my legs straight in the air, my feet facing the ceiling.

. . . .

Dr. Chen [was] running the drill at the highest possible speed . . .

. . . .

Dr. Chen started complaining, stating that she had something important to do and [that] I was a difficult patient. The assistant stated his wife called him and she had to work late, and he must go pick up the kid or kids from daycare.

Dr. Chen was drilling no matter how I cried and screamed and moaned. The assistant not letting go.

The assistant tells Dr. Chen that's enough, Dr. Chen got upset and replied to him "you don't tell me nothing I know what I am doing, at this point my body is no longer jerking but burning in my mouth and a horrible smell, Dr. Chen was burning me with the drill inside the tooth.

. . . .

The assistant applied more pressure to my head to hold me still and down.

I told Dr. Chen burn, burning you are burning me. (I was again ignored)

Dr. Chen dropped an instrument (looking like a tiny mirror) on the floor and asked the assistant for another one, he stated they are all in the autoclave being cleaned. Dr. Chen then put the instrument in my mouth saying, "she is not a normal person."

. . . .

The assistant asked "Ms. Brown" we are closed is there anything else we can help you with, I said no and standing and fell back into seat. (I do remember the office being crowded with patients. It is my belief that Dr. Chen and the staff left me on laughing gas (nitrous oxide) until they finished taking care of all other patients purposely to torture me therefore no one could come to my aide.

4

> No documentation of oxygen given after hours of inhaling nitrous oxide.
>
> No documentation of any time removal of nitrous oxide from approximately 1:30pm until 6pm
>
> I was found in the parking lot of [JDC] unconscious next to my car by [NRHPD].
>
> . . . .
>
> I called [JDC] Corporate Office on 3/9/2021 made a formal complaint of what happened to me on 3/8/2021. I was told they would escalate call to supervisor que, and I would receive a call back. No calls from [JDC] until 06/2/2022.

(Pl.'s Compl. at 12-14.)

In its motion, JDC argues it overcomes Anthony-Brown's claims against it as Anthony-Brown failed to plead:

> [That JDC] was acting under the color of state law when it treated [her] or (2) that any conduct allegedly committed by [JDC] deprived [Anthony-Brown] of rights, privileges, or immunities secured by the Constitution or the laws of the United States.

(Defendant JDC's Motion to Dismiss ("Def. JDC's Mot. to Dismiss") at 2.)

## II.    LEGAL STANDARD

Rule 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted." This rule must be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Rule 8(a) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(A)(2); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (holding that Rule 8(a)'s simplified pleading standard applies to most civil actions). The Court must accept as true all well-pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992). Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). The Court need not credit bare conclusory allegations or "a formulaic recitation of the elements of a cause of action." *Id.* Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).[4]

### III. DISCUSSION

#### A. Moore

The Court first turns to the threshold issues raised by Moore: whether he is entitled to prosecutorial, Eleventh Amendment, or qualified immunity from Anthony-Brown's claims against him.[5] The Court first addresses Moore's prosecutorial immunity argument. Title 42 U.S.C. § 1983 provides that "(e)very person" who acts under color of state law to deprive another of a constitutional right shall be answerable to that person in a suit for damages. However, Courts have long recognized that "a prosecutor enjoys absolute immunity from section 1983 suits for damages when he acts within the scope of his prosecutorial duties." *Imbler v. Patchman*, 424 U.S. 409 (1976) (citing multiple cases). Prosecutorial duties are broad, though

---

[4] Additionally, because Anthony-Brown is a *pro se* litigant, the Court has a duty to liberally construe the pleadings and motions in her favor. Thus, her papers are held to a less stringent standard than formal pleadings drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam).

[5] "[I]t remains appropriate for district courts to consider the possible applicability of the doctrine of absolute immunity . . . as a threshold matter." *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994); *Hulsey v. Owens,* 63 F.3d 354, 356 (5th Cir. 1995) (absolute immunity is a threshold matter that should be determined as early as possible in a proceeding).

6

not unlimited, in scope. For instance, a prosecutor acts pursuant to his prosecutorial duties when a prosecutor prepares to initiate a judicial proceeding but do not apply when a prosecutor gives advice to police during a criminal investigation. *Burns v. Reed*, 500 U.S. 478, 492 (1991); *see Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) (prosecutorial immunity not applicable for prosecutor making statements to the press); *see Henagan v. City of Lafayette*, No. 6:21-CV-03946, 2022 WL 4553055, at *15 (W.D. La. Aug. 16, 2022) (prosecutor enjoys "absolute prosecutorial immunity [], as charging decisions clearly fall within the ambit of that immunity under applicable jurisprudence.") The reasoning behind affording prosecutors such immunity is that the "'public trust of the prosecutor's office would suffer' were the prosecutors to have in mind his 'own potential damages liability' when making prosecutorial decisions—as he might well were he subject to § 1983 liability." *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009) citing *Imbler* 424 U.S. at 424; *see also Kalina v. Fletcher* 522 U.S. 118, 125 (1997) (prosecutorial immunity is in the interest of protecting "the proper functioning of the office, rather than the interest in protecting its occupant.")

As stated, *supra*, Anthony-Brown's Complaint seemingly alleges, *inter alia*, that Moore violated her § 1983 rights by denying her requests to further investigate her experience at JDC and failing to open a criminal case against Dr. Chen and her assistant. (Pl.'s Compl. at 18.) As Anthony-Brown describes in her pleading, it is clear that Moore's actions were taken within the scope of his prosecutorial duties. Further, Moore's decisions regarding any subsequent investigation and charging of JDC or its employees fall squarely within the domain of prosecutorial immunity. *See Beard v. Wolf*, No. 13-4772, 2014 WL 3687236, at *3 (E.D. La. 2014) ("[T]he protection of absolute prosecutorial immunity is at its zenith when charging decisions are involved.") Accordingly, the Court **FINDS** Anthony-Brown's claims against Moore are barred by prosecutorial immunity and that she has failed to state a claim against

Moore upon which relief may be granted. Therefore, the Court **RECOMMENDS** that Moore's Motion to Dismiss [doc. 8] be **GRANTED** and all claims against him be **DISMISSED**.[6]

### B.  JDC

The Court now addresses whether Anthony-Brown has pled facts necessary to support a § 1983 claim against JDC. Under § 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.

The statute's first prong—acting under the color of state law—"requires a defendant in an § 1983 action have exercised power possessed by virtue of state law and made possibly only because the alleged wrongdoer is clothed with authority of state law." *Kallinen v. Newman*, 616 F.Supp.3d 645 (S.D. Tex. 2022) citing *West v. Atkins*, 487 U.S. 42, 49 (1988). The key question is whether a defendant official "used his official power to facilitate his actions" and if "there is a nexus between the victim, the improper conduct, and the [official's] performance of official duties." *Bustos v. Martini Club, Inc.*, 599 F.2d 458, 564-65 (5th Cir. 2010) citing *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002) (internal citations omitted). The second prong requires that the conduct complained of deprived plaintiff of a constitutional right.

Anthony-Brown's facts as pled fail to adequately state a § 1983 claim against JDC. In her Complaint, she fails to allege that JDC possessed state law authority and/or exercised state law power. In her pleading, she fails to plead any nexus connecting herself, JDC's alleged

---

[6] At this time, because the undersigned is recommending dismissal of all claims against Moore based on prosecutorial immunity, the undersigned declines to address Moore's three remaining arguments for prevailing on Anthony-Brown's claim. However, should these findings, conclusions, and recommendation be rejected, the undersigned will then address Moore's remaining arguments.

improper conduct, and any alleged official duties of JDC. And, while it is clear that Anthony-Brown is distraught about her experience at JDC, she wholly fails to plead she was deprived of any specific constitutional right. Accordingly, the Court **FINDS** Anthony-Brown has failed to state a § 1983 claim for which relief may be granted. Thereby, the Court **RECOMMENDS** that JDC's motion to dismiss [doc. 14] be GRANTED and all claims against it be **DISMISSED**.

## RECOMMENDATION

Based on the above findings, it is **RECOMMENDED** that both Defendants Moore and JDC's motions to dismiss [docs. 8, 14] be **GRANTED** and all claims against them be **DISMISSED**.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **May 4, 2023**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED April 20, 2023.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE